| DR. CHRISTIAN VICTOR FUGAR | * | NO. 2022-CA-0618 |
|---|---|---|
| | * | |
| VERSUS | * | COURT OF APPEAL |
| | * | |
| DILLARD UNIVERSITY | * | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-11140, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rachael D. Johnson, Judge Nakisha Ervin-Knott)

***LOBRANO, J., CONCURS IN THE RESULT***

Pius A. Obioha
Jordan P. Parker
LAW OFFICE OF PIUS A. OBIOHA & ASSOCIATES, LLC
1550 North Broad Street
New Orleans, LA 70119


COUNSEL FOR PLAINTIFF/APPELLANT


Darren Albert Patin
HAILEY McNAMARA HALL LARMANN & PAPALE
3445 N. Causeway Blvd., Suite 800
Metairie, LA 70002


COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**FEBRUARY 13, 2023**

Dr. Christian Fugar ("Dr. Fugar") seeks review of the trial court's May 5, 2022 judgment granting Dillard University's ("Dillard") motion for summary judgment and dismissing Dr. Fugar's case. After considering the record before this Court, we affirm the judgment of the trial court.

### **Relevant Facts and Procedural History**

Dr. Fugar was employed with Dillard University from 1988 until his termination on November 6, 2017. Since 2007, he has resided in Houston, Texas. Beginning in the Fall 2014 semester, he served as an Associate Professor of Economics and Finance.

On August 15, 2017, Dr. Fugar informed his immediate supervisor, Dr. Mohammed Hussain, that he received a jury duty summons from the Harris County Criminal Courthouse for the week of August 21, 2017, which happened to be the same week that classes began at Dillard. On August 16, 2017, Dillard approved his leave for the dates of the jury service and instructed him to provide an updated summons if the service was extended. Dillard also requested that he provide the University and his students with a course syllabus prior to the start of classes, but he did not do so.

1

Dr. Fugar appeared for his jury service in Harris County on August 22, 2017, and he was selected to serve as a juror. On August 25, 2017, the presiding judge dismissed the jurors and instructed them to return the following Tuesday in light of Hurricane Harvey's anticipated landfall. Between August 23, 2017 and September 7, 2017, Dillard did not hear from Dr. Fugar despite sending him multiple email requests for his syllabus. On September 8, 2017, Dr. Richard Igwike, the Dean of the College of Business, made contact with Dr. Fugar, who indicated that he was still on jury duty at that time. That same day, Dr. Yolanda Page, the Vice President of Academic Affairs, contacted the Harris County courthouse and learned that the jurors were not expected to return for jury service until October because the courthouse had sustained damages from the hurricane.

On September 8, 2017, Dillard sent Dr. Fugar a letter informing him that he was suspended without pay and that termination proceedings were being initiated against him. Dr. Fugar received this letter on September 9, 2017. On September 13, 2017, Dr. Fugar contacted the Harris County courthouse, and the court informed him that the trial would not resume until October. Dr. Fugar returned to Dillard's campus on September 18, 2017. On September 19, 2017, the presiding judge in Harris County sent a letter to Dr. Page confirming that Dr. Fugar served as a juror on August 22-25, that trial was postponed, and that his presence was not required in court until the trial resumed in October.

On October 10, 2017, Dillard held a termination hearing. Dr. Fugar was given the opportunity to present evidence and argue on his behalf at the hearing. On October 25, 2017, the Academic Responsibility/Grievance and Ethics Committee recommended that Dr. Fugar be terminated, and Dillard officially dismissed him on November 6, 2017.

On November 5, 2018, Dr. Fugar filed suit against Dillard, alleging that it had violated La. R.S. 23:965 and 28 U.S.C. § 1875 by terminating his employment on the basis of his jury service. On November 15, 2021, Dillard filed a motion for summary judgment. In its motion, Dillard argued that it had not terminated Dr. Fugar on account of his jury service but rather based on multiple charges that had occurred over a long period of time. Dillard argued that Dr. Fugar had a documented pattern of missing his classes and mandatory University functions dating years prior to his jury service. The district court heard the merits of the motion on March 25, 2022 and granted summary judgment, dismissing the suit in its entirety. The written judgment was signed on May 5, 2022, and notice was mailed on May 9, 2022. This appeal followed.

### Standard of Review

"An appellate court reviews a trial court's decision to grant a motion for summary judgment *de novo*." *Guilbeaux v. Lupo Enterprises, L.L.C.*, 2021-0053, p. 4 (La. App. 4 Cir. 5/19/21), 321 So. 3d 447, 451. When reviewing whether a trial court properly granted summary judgment, the appellate court asks the same questions as the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 26 (La. 7/05/94), 639 So. 2d 730, 750. "This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law." *Chanthasalo v. Deshotel*, 2017-0521, p. 5 (La. App. 4 Cir. 12/27/17), 234 So. 3d 1103, 1107 (quoting *Ducote v. Boleware*, 2015-0764, p. 6 (La. App. 4 Cir. 2/17/16), 216 So. 3d 934, 939).

**<u>Assignment of Error</u>**

On appeal, Dr. Fugar contends that the district court erred in granting Dillard's motion for summary judgment because he had met his burden of proof in showing that genuine issues of material fact existed.

**<u>Discussion</u>**

*A. Summary Judgment Standard*

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id.* "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." *Id.* at (A)(3). "On a motion for summary judgment the mover bears the burden of proof but is not required to negate all elements of the adverse party's claim if the mover will not bear the burden of proof at trial." *Guilbeaux*, 2021-0053, p. 6, 321 So. 3d at 452 (citing La. C.C.P. art. 966(D)(1)). If the mover meets this burden of proof, then the adverse party must come forth with evidence demonstrating that he will be able to meet his burden at trial. *Babin v. Winn-Dixie Louisiana, Inc.*, 2000-0078, p. 4 (La. 6/30/00), 764 So. 2d 37, 39-40. "[A]n adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B).

*B. Violation of 28 U.S.C. § 1875*

Dr. Fugar alleges in his petition that Dillard violated both federal and state law when it terminated him for his jury service.

4

28 U.S.C. § 1875(a) mandates:

No employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States.

To support its motion, Dillard relies on *Rogers v. Bromac Title Services, L.L.C.*, a United States Court of Appeals Fifth Circuit case. 755 F.3d 347 (5th Cir. 2014). In *Rogers*, the Fifth Circuit determined that a "but-for" causation standard applies to violations of 28 U.S.C. § 1875(a). In order to be successful at trial, a plaintiff must show that his jury service is the "but-for" reason for his employment termination. *Id*. at 352. In other words, the plaintiff's jury service must have had a determinative influence on the defendant's decision to terminate his employment. *Id*. at 351 (analyzing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009)).

At the hearing on the motion for summary judgment, Dillard introduced into evidence excerpts from the depositions of Dr. Fugar and various University officials who were involved with the termination process. The depositions introduced into evidence established that (1) Dr. Fugar was required to teach a five day class schedule, (2) Dr. Fugar failed to teach a portion of his classes, and (3) Dillard had brought charges against him based on information compiled from 2015-2017. Dillard also introduced the Faculty Handbook as well as numerous emails and correspondence documenting the complaints made against Dr. Fugar. Plaintiff did not object to the introduction of this evidence.[1] The Handbook stated

---

[1] "Louisiana Code of Civil Procedure Article 966(D)(2) requires a court to consider any documents filed in support or in opposition to a motion for summary judgment to which no objection is raised." *In re Medical Review Complaint by Downing*, 2021-0698, p. 25 (La. App. 4 Cir. 5/26/22), 341 So. 3d 863, 879 (citing *Mariakis v. North Oaks Health Sys.*, 2018-0165, p. 11 (La. App. 1 Cir. 9/21/18), 258 So. 3d 88, 96).

that (1) faculty were required to meet with their classes as scheduled and inform their supervisors if they could not do so, (2) faculty were required to file a course syllabus with the University and distribute it to students on the first day of class, and (3) faculty were required to participate in University meetings and certain University sponsored events. The Handbook further outlined that the University would institute termination procedures against a faculty member for professional misconduct. Professional misconduct violations included a flagrant disregard of the policies and procedures of the University and a continued neglect of academic duties and responsibilities.

The relevant emails and correspondence attached in support to the summary judgment motion are summarized below:

> In 2015, University officials sent multiple emails and letters to Dr. Fugar concerning his failure to attend his Friday classes. Dr. Fugar also received a Human Resources complaint about his treatment of a colleague. He responded to that complaint months later in a memorandum that he sent to the "Dillard University Faculty" and "Dillard University Board of Trustees". He was subsequently reprimanded by Dr. Page for his improper use of the University's electronic communications system.

> In the spring 2016 semester, Dr. Fugar was reprimanded for cancelling his class and failing to inform his supervisors of the cancellation. He was also reprimanded for failing to attend a school banquet. Dr. Fugar responded to this reprimand through a memorandum weeks later that he, again, sent to the "Dillard University Faculty" and "Dillard University Board of Trustees".

> In the fall 2016 semester, Dr. Page sent letters to Dr. Fugar noting that he had missed half of his required class meetings and informing him that his class would be reassigned to a different professor. Furthermore, the Director of Human Resources sent letters to Dr. Fugar documenting that a complaint had been filed against him for bullying, intimidation, and creating a hostile work environment. Despite being instructed to appear for a meeting on the issue, he did not do so. Dr. Fugar responded to the complaint through a memorandum that he sent to the "Dillard University Board of Trustees", "National and Local News Media", and "U.S. Department of Labor—EEOC". As a result of the complaint, he was instructed to

complete a Conflict Resolution training course by a certain deadline. He failed to do so.

On August 16, 2017, Dr. Page sent a letter to Dr. Fugar informing him that his leave for jury duty was approved for the date indicated on his summons. The letter informed Dr. Fugar to provide an updated summons if his service dates were modified or extended. The letter also stated that his failure to meet with his classes absent a new summons would result in corrective action. Furthermore, the letter instructed Dr. Fugar to post the syllabus and class documents for his classes to his Canvas account. On August 21, Dr. Hussain emailed him a request for his syllabus. On August 22, Dr. Fugar emailed Dr. Hussain that he had been selected as a juror for trial. On August 31, Dr. Page emailed Dr. Fugar a request for his syllabus. On September 1, the Director of Academic Technology emailed Dr. Page that Dr. Fugar had not posted any syllabus or documents to his classes' Canvas account and that he had no activity on the account. On September 8, Dr. Igwike emailed Dr. Page indicating that he spoke with Dr. Fugar, who represented that he was still on jury duty and that he would prepare his syllabus if someone would retrieve the books in his office and mail them to him. Dr. Igwike sent Dr. Page another email stating that Dr. Fugar's lack of response to the request for his syllabus and his failure to prepare the syllabus were unacceptable. Dr. Igwike wrote that they would have to re-assign Dr. Fugar's classes to other faculty members. That same day, the Director of Human Resources mailed a letter to Dr. Fugar informing him that the University was instituting termination procedures in accordance with the professional misconduct section of the Faculty Handbook.

In response to the motion for summary judgment, Dr. Fugar introduced various articles and disaster declarations related to Hurricane Harvey, as well as deposition testimony. The excerpts of the depositions introduced by Dr. Fugar established that Dillard had multiple reasons to institute termination proceedings against him. Notably, Dr. Fugar admitted in his deposition to receiving complaints from the University regarding his absence from his classes and his harassment of other faculty members. He admitted that he had doctor appointments scheduled during his Friday classes in 2015. He also admitted that an investigation had been conducted in 2016 regarding his treatment of a colleague. The crux of Dr. Fugar's opposition focuses on his absence during his jury service and the disaster created

by Hurricane Harvey, but it ignores the overwhelming evidence presented of his documented absences and disciplinary warnings dating back years prior to August 2017.

Furthermore, Dr. Fugar admitted in his deposition that he had not contacted his supervisor from August 25 to September 8 to provide an update on his jury service or circumstances. He admitted that as of September 8, three weeks into the semester, he had not provided a syllabus to his classes or made an effort to obtain the materials he needed to create a syllabus. Finally, he admitted that he did not report to Dillard's campus until September 18, almost a month after classes had begun and after termination proceedings had been initiated against him. Dr. Fugar's admissions established that he failed to perform his job responsibilities both prior to and after his jury service.

When a motion for summary judgment has been made and properly supported, the burden shifts to the non-moving party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Jones v. Boot Bar & Grill*, 2022-0154, p. 13 (La. App. 4 Cir. 10/05/22), 350 So. 3d 968, 979. "The adverse party may not rely on mere allegations or denials to defeat a motion for summary judgment but must provide specific facts showing that a genuine issue remains for trial, and the failure to do so will result in the rendering of the summary judgment." *Id*. (citing La. C.C.P. art. 967(B)). In this case, Dillard provided sufficient evidence to show that Dr. Fugar failed to perform his job obligations prior to and after his jury service. It also provided evidence that Dr. Fugar had a troubled record with the University dating years prior to his jury service. Although he disagreed with the University's rules and procedures, Dr. Fugar did not present any evidence

8

showing that his jury service was a determinative influence in his termination. His deposition testimony failed to rebut the voluminous evidence of documented misconduct and, to the contrary, it confirmed that he failed to follow proper University procedure. As such, Dr. Fugar failed to meet his burden in showing that a genuine issue of material fact existed. Therefore, the trial court properly granted summary judgment as it related to this claim.

### C. Violation of La. R.S. 23:965

La. R.S. 23:965(A)(1) provides:

No employer shall discharge or otherwise subject to any adverse employment action, without cause, any employee called to serve or presently serving any jury duty and no employer shall make, adopt, or enforce any rule, regulation, or policy providing for the discharge of any employee who has been called to serve, or who is presently serving on, any grand jury or on any jury at any criminal or civil trial, provided the employee notifies his or her employer of such summons within a reasonable period of time after receipt of a summons and prior to his or her appearance for jury duty.

The only case that discusses this issue, as cited by both parties, is *Anderson v. Monsanto Co.*, an unpublished case from the United States District Court for the Eastern District of Louisiana. *See* No. CIV. A. 06-4002, 2006 WL 3512651 (E.D. La. Dec. 5, 2006). In that case, the district court examined the plain language of the statute to determine whether a violation had occurred. Ultimately, it determined that the defendant had not violated the statute by terminating the plaintiff's employment when he failed to return to work after being discharged from his jury duty service. We find the facts of this case to be similar.

As shown by the evidence presented, Dr. Fugar presented to jury duty in Houston on August 22-25, 2017. Thereafter, the trial was postponed due to damages sustained by the courthouse during Hurricane Harvey. Dr. Fugar admitted

in his deposition that he did not return to campus until September 18, 2017, despite the fact that his presence was not required at court. The affidavit provided by the Jury Manager for the Harris County courthouse established that Dr. Fugar was paid for five days of jury service, which reflected the number of days he was obligated to be present in court. The presiding judge of the trial issued a letter indicating that Dr. Fugar's presence was not required until the trial reconvened in October of that year. Dr. Fugar admitted that he did not update his supervisors on his jury service status until September 8. He also admitted that he had not provided a syllabus to his students or made an effort to do so. Given the evidence presented, we find that the district court did not err in granting summary judgment on this issue.

## **Decree**

For the foregoing reasons, we affirm the holding of the district court granting Dillard University's motion for summary judgment and dismissing this suit.

**AFFIRMED**